| 43 | 529 |
| 87 | 598 |

———◇———

## TAYLOR PARSHALL v. GUYON T. FISHER.

*Constructive partnership—Estoppel—Good faith—Trover for goods taken on attachment.*

A firm composed of two women put the husband of one in absolute charge of the business, and he thereafter made purchases on his own credit, and with his wife's knowledge and consent acted in all respects as if he instead of his wife was one of the partners. *Held* that as to creditors who had no notice to the contrary, he was to be considered as a partner; that his statements to a creditor to that effect were admissible in defense to an action of trover for goods taken on attachment; and that, unless superior equities had arisen, a judgment against the firm concluded the other partner. Such equities could not arise from the purchase alone in favor of the partner whose responsibility did not appear.

43 MICH.—67.

In an action of trover for goods taken on attachment against a firm, the testimony of those who had dealt with it, showing their understanding as to who composed it and the whole state of facts as to how business was done, was admissible.

Where a female member of a firm had allowed her husband to be held out as a partner in her place, a conversation concerning the payment of a claim, carried on between the husband and the attorney of an attaching creditor in the wife's absence, but in the presence of a transferee of the firm property, and before the latter had parted with any consideration, was held admissible to show the bad faith of the transferee.

An estoppel may arise against a partner from allowing another person to be put forward as the real party in interest and to be represented after dissolution of the firm as the only owner of the business.

Good faith in the purchase of partnership assets is not presumable from the payment of a valuable consideration if it appears that the purchaser knows that creditors are urgent, and that there is no change in possession or in the control of the business.

Error to Livingston. Submitted April 27. Decided June 9.

TROVER. Defendant brings error.

*A. D. Cruickshank* and *R. D. Person* for plaintiff in error.

*H. F. Higgins* and *Waddell & Montague* for defendant in error. Statements of an agent of a firm as to who compose it are not admissible unless it is shown that he was a partner or that they were made in the hearing or by the knowledge or consent of partners, Collier on Partnership [4th Am. ed.] §§ 774–780; 1 Greenl. Ev. § 177; 2 id. § 484; 4 Stark. Ev. 1072; *Heffron v. Hanaford* 40 Mich. 305; *Pleasants v. Fant* 22 Wal. 119; *Nudd v. Burrows* 91 U. S. 438–9; *Lockwood v. Beckwith* 6 Mich. 172; *Pennoyer v. David* 8 Mich. 408; *Mitchell v. Roulstone* 2 Hall 357: *Whitney v. Ferris* 10 Johns. 66; *Tuttle v. Cooper* 5 Pick. 414; *Robbins v. Willard* 6 Pick. 464; *Harris v. Wilson* 7 Wend. 57; *Dutton v. Woodman* 9 Cush. 255; *McPherson v. Rathbone* 7 Wend. 216; general reputation as to who constitute a firm is inadmissible unless credit was obtained on it, 1 Greenl. Ev. § 101; *Benjamin v.*

*Covert* 2 N. W. Rep. 625; Coll. Partnership § 777; *Sager v. Tupper* 38 Mich. 258.

CAMPBELL, J.   Fisher sued Parshall in trover for the value of a stock of boots and shoes, on which the latter had levied attachments against Thomas C. Moss and Ella B. Fisher, formerly Smith, and then wife of one George L. Fisher.   The attachments were levied July 2, 1878, and judgments were obtained and executions issued in the middle of the same month, and the goods sold under them.

The property had been in the possession and ownership of the firm of Moss & Smith.   That firm was dissolved in June, 1878, and Miss Smith retired.   It is claimed by Fisher that this firm was composed of Christiana Moss and Ella B. Smith, and that after the dissolution Mrs. Moss, who was wife of Thomas C. Moss, was to keep the assets and pay the debts.   He further claims that on the 1st day of July, 1878, he bought this stock of Mrs. Moss for a half interest in a patent heel support, which he then transferred to Mr. and Mrs. Moss, the consideration moving only from her.   Parshall claims that the real firm was composed of Thomas C. Moss and Miss Smith, and that the sale to Fisher was a fraud.

The partnership was alleged to have been formed by a writing dated May 1, 1877, between Mrs. Moss and Miss Smith, who then resided in Detroit.   It was for one year.   In the subsequent October they moved to Fowlerville, where the transaction complained of took place.   This partnership was dissolved by a written agreement dated June 6, 1878.

It appears further that on the 1st of May, 1877, an agreement in writing was made in the name of the firm of Moss & Smith with Thomas C. Moss, whereby he was put in complete and absolute charge of the business, of which he was to conduct the operations, keep the books and render proper accounts, for eighteen dollars a week.

It appears also that he did thus control all the business and made the purchases, and that he so purchased without disclosing that his wife was a member of the firm. The goods were sold on his credit and on the assumption that he was the partner of Miss Smith. After the dissolution the notices of dissolution, printed with his wife's knowledge, recited him as the partner, who was to continue the business on his own account. A further business notice of the same purport was also distributed, and the form was known and approved by Mrs. Moss before it was got out.

Mr. Fisher's own statement shows that up to July 1, 1878, he had been employed as boot and shoe-maker by the concern; that Mrs. Moss proposed to him on that morning to exchange half of his patent for the business stock, and the bargain was closed by acceptance at nine o'clock in the morning of Monday, July 1st, the same day when it was first suggested, and the consideration transferred in the afternoon. He says he employed Mrs. Moss and her husband to manage the business at nine dollars each per week, and that he kept on at the same kind of manual work he had done before.

There was evidence on both sides bearing on whether he had actual knowledge of the pressure of creditors. Other facts appeared which need not now be dwelt upon.

One of the two judgments was in favor of A. C. McGraw & Co. It appeared that they knew nothing of Mrs. Moss, and dealt on the understanding that her husband was the party interested. One of the firm having stated that his knowledge that T. C. Moss and Miss Smith were the partners was derived from Moss himself, the court struck out the testimony.

We think this was error. They had a right to show that they dealt with a firm known as Moss & Smith, of which he was partner. As against Miss Smith it might be that his statements alone could create no liability. But the judgment concluded her. And inasmuch as

Mrs. Moss had expressly given her husband plenary powers over the business and authorized him to deal as he chose, there was no other way in which the sellers could know with whom they were dealing, except to act on his representations. They had a right to hold him as the partner representing the only firm with which they dealt, and they had a right on a judgment against that firm to levy on the property which had been sold to it, unless superior equities had arisen. As to Mrs. Moss, those equities in her favor could not arise from the original purchase alone, in which she was not known. These facts therefore were all admissible in evidence. Their conclusiveness would depend on circumstances.

The court also shut out several pieces of testimony indicating the understanding of persons in Fowlerville who had lent money to and otherwise dealt with the firm, as to who composed it. All this should have been received. The testimony was uniform that no one knew Mrs. Moss as a partner, and that Thomas C. Moss was the apparent partner and actual manager. If Mrs. Moss was a partner at all, it was kept secret designedly, and she never did any important act for the firm. The whole state of facts relating to the way in which the business was done was relevant. It bore not only on the parties who as to these outside persons might be treated as partners, but also upon the fact itself. Under this testimony, if true, there could be no doubt at all that there was as to creditors a partnership between Mr. Moss and Miss Smith. If they were partners it is not shown that there was a third.

We think the court erred in excluding proof of a conversation in Fisher's presence between Mr. Cruickshank, attorney for one of the attaching creditors, and Moss, on the morning of July 1st, concerning payment of their claim, on the ground that it was in the absence of Mrs. Moss. Not only was her interest disputed, but this conversation was before Fisher had transferred his patent interest and before, therefore, he had parted with any

consideration.　It was admissible to show his bad faith.

Assuming that Mrs. Moss, as between herself and her husband and Miss Smith, was really partner, we think that if the jury were satisfied that the business was so carried on as the testimony indicated, and that Moss was put forward as the person who was apparently the real party in interest, and after dissolution represented as the only owner of the business, there was enough to create an estoppel.

In charging that Fisher if he paid a valuable consideration was presumptively a *bona fide* purchaser, it seems to have been overlooked that there was evidence tending to show personal knowledge on his part that creditors were urgent, and also that there was no apparent change in the possession or control of the stock and business.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.