HENRY WRIGHT AND ORRY WATERBURY v. ALBERT WEIMEISTER, SURVIVOR OF HIMSELF AND JOHN WEIMEISTER, DECEASED.

*Partnership—Pleading—Evidence.*

1. An objection that proof that the defendants in an attachment suit are copartners is inadmissible, because not charged to be such in the affidavit for the writ and in the declaration, but simply as joint debtors, cannot be raised for the first time in the appellate court.

2. In a suit prosecuted against the surviving member of a banking firm, who denies its existence, but of which fact convincing evidence has been given, the statements of a cashier, whose general agency has been established, made to the plaintiffs, who contemplated making deposits, as to the existence of the firm, are admissible in evidence as part of the *res gestae*, as is the plaintiffs' testimony that they made deposits in reliance

upon the information thus received, and that from the time of such conversation they understood that the surviving defendant and his deceased co-defendant composed the firm; the last point being ruled by *Parshall v. Fisher*, 43 Mich. 529.

3. Where on the dissolution of a banking firm, and the formation of a new one to continue the business, the certificate required by How. Stat. §§ 3128, 3129, giving the names of the members of the new firm, etc., is not filed with the county clerk, such omission cannot be shown by a surviving member of the new firm, in a suit involving the question of its existence, in support of a claim that until the filing of such certificate the old firm could not be legally dissolved and a new one formed.

4. The evidence in this case, which is summarized in the opinion, is held to establish the copartnership relation of the original defendants, in fact as well as to third persons.

Error to Livingston. (Newton, J.)   Argued June 10, 1891.   Decided October 9, 1891.

*Assumpsit.*   Defendant brings error.   Affirmed.   The facts are stated in the opinion.

*D. Shields*, for appellant, contended:

1. There is a variance between the pleadings and the proofs on the question of partnership; citing *Mead v. Raymond*, 52 Mich. 14; *Moore v. Nason*, 48 Id. 300; and plaintiffs cannot be permitted to change the theory of their case, as determined by their declaration and prior proceedings, by making proof of a partnership, they having proceeded against defendants as *joint debtors;* citing *Stove Co. v. Osmun*, 73 Mich. 575.

2. The statements of Mr. Hammell were not within the scope of his authority, and do not fall within the rule which makes the statements of an agent competent, and his admissions cannot be assimilated with those of the principal; citing Dunl. Pal. Ag. 269, 270; and to constitute such statements *res gestae*, they must have been made at the time the money was deposited; citing 1 Greenl. Ev. §§ 113, 114.

3. The partnership cannot be proven by proof of the statements of the defendant that he was a member of the firm; citing 1 Greenl. Ev. § 177; and for the purpose and application of the doctrine of estoppel, see Herm. Estop. 1, 2; *Dickerson v. Colgrove*, 100 U. S. 578; 1 Jacobs & C. Dig. 792–800.

*L. S. Montague* (*W. W. Mitchel*, of counsel), for plaintiffs, contended for the doctrine of the opinion.

GRANT, J. This is an action of *assumpsit*, commenced by attachment September 25, 1889, against John and Albert Weimeister. John died October 3, 1889; and April 29, 1890, his death was suggested, and the suit revived against the defendant. The sole question in controversy was whether John and Albert were copartners.

John Weimeister and one Neil O'Hearn had been for many years engaged in general merchandising and banking in the village of Howell. August 8, 1889, they dissolved, O'Hearn selling to John Weimeister. John Weimeister continued in the business, and plaintiffs claim that Albert became a partner with John; and also that, whether he was in fact a partner or not, he is estopped by his acts and conduct from denying it. Upon the dissolution of the firm of Weimeister & O'Hearn the business was continued, both in banking and merchandising, under the name of John Weimeister & Co., until September 25, 1889, when John Weimeister executed an assignment for the benefit of his creditors, and both the bank and the store were thereupon closed.

Albert admits that for some time prior to the dissolution on August 8 there had been an understanding between himself and John Weimeister that O'Hearn should go out and Albert should become a partner; that upon the dissolution of the old firm he immediately commenced to sign drafts by the name of John Weimeister & Co., and continued to do so up to the time of the failure; that he went to Detroit, and ordered a stamp, which read, "John Weimeister & Co., Successors;" also another, which read, "John Weimeister & Co. Paid,"—which stamps were in constant use; that he bought goods in the name of the new firm, informing the vendors that

he was a member of the firm; that he knew it was generally understood in the community that he was a member of the firm; that he was frequently congratulated upon the fact, and never denied it; that he ordered printed note-heads, headed "John Weimeister & Co.," with the name of John Weimeister in one corner and Albert Weimeister in the other, which were used and circulated by them. Besides these admissions, the dissolution of the old firm and the formation of the new one, composed of John and Albert Weimeister, was announced in the two newspapers published in the village of Howell. This was done at the request of John Weimeister, and in one instance in the presence of Albert. Many witnesses testified that Albert informed them that he was a partner. Many more testified that John informed them that Albert was a partner. Albert had been in the employ of Weimeister & O'Hearn, but after August 8 he performed duties, such as the signing of checks, which he had not done before, and which none but the partners of the old firm had ever done. One Hammell, who had been for many years the cashier of the bank, and had had almost the entire charge of the banking business, informed the customers that the new firm was composed of John and Albert.

No other conclusion could honestly have been reached by the jury than that John and Albert were not only estopped from denying that they were partners, but that they were partners in fact.

After this statement of facts, the alleged errors can be very readily disposed of.

1. The affidavit for attachment and the declaration did not alleged that John and Albert were partners. They simply alleged that John and Albert, the defendants, were justly indebted to the plaintiffs in a certain sum. It is insisted that proof of the partnership was inadmissible

under the pleadings. This objection was not made in the court below, and cannot now be raised here. The point is too technical to require further comment.

2. At the time of the change in the firm plaintiffs had a deposit in the bank, and were also contemplating future deposits, which were afterwards made. On learning of the change, the plaintiff Wright went to the bank to ascertain the facts in regard to it. Neither John nor Albert was there. Mr. Hammell was there, in sole charge of the business, as was usually the case. Mr. Wright sought information in the due course of business. His future course would be shaped by the information obtained. He went to the usual place of business. He found there the general agent in charge. He went to the proper place and to the proper party to make inquiries. This testimony was objected to as incompetent, and this is the principal question now in controversy. When this testimony was offered, Hammell's agency had been fully established, and convincing evidence of the existence of the partnership had been introduced. The evidence was properly admitted. The statements were part of the *res gestae*.

3. It was competent for the plaintiffs to testify that they subsequently deposited money in the bank, relying upon the information they received from Mr. Hammell. It was necessary for the plaintiffs to prove this under the theory of estoppel.

4. Under the circumstances of this case, we see no error in permitting the plaintiff Wright to testify that from the time of this conversation with Mr. Hammell he understood that John and Albert composed the firm. This point is ruled by *Parshall v. Fisher*, 43 Mich. 529.

5. The statute of Michigan requires that all persons engaged in the business of banking shall make and file with the county clerk a certificate in writing, setting

forth the names of the members of the firm, and certain other facts. It also provides that in case of a change in the name or style of a firm a new certificate should be filed, and that until such new certificate shall have been filed the members of the old firm shall be held to be the actual members, liable for any obligation incurred by the firm. How. Stat. §§ 3128, 3129. The circuit court rejected evidence that no such certificate had been filed by John and Albert Weimeister. Defendant's counsel insists that, until this certificate was filed, the old firm was not legally dissolved, and that Albert could not become a partner. This position is untenable. Persons engaged in the banking business will not be permitted thus to take advantage of their own neglect of duty.

We find no error in the record, and the judgment is affirmed.

The other Justices concurred.